IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ANTHONY H. BALL, )<br> )<br> Plaintiff, )<br> ) 3:12-CV-00014-JO<br>v. )<br> )<br>CAROLYN W. COLVIN, Acting Commissioner of ) OPINION AND ORDER<br>Social Security, )<br> )<br> Defendant. ) | |

JONES, J.,

Plaintiff Anthony Ball appeals the Commissioner's decision denying his application for disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

The procedural history of this case began in May 2001, when Ball initially filed his application for disability insurance benefits. He alleged he became disabled in June 2000 from degenerative joint disease of the left shoulder, degenerative disc disease of the lumbar spine, post-traumatic stress disorder ("PTSD"), gastro-esophageal reflux disease, hemorrhoids, flat feet, chronic fungal skin infection, and chronic irritation of facial hair follicles. He alleged he could no longer perform his work as an equal opportunity specialist because his impairments caused him to have

1 - OPINION AND ORDER

interpersonal conflicts at work and left him unable to do the physical requirements of his job. The Commissioner found, however, that Ball resigned his position in June 2000 because he did not want to accept a transfer that would require him to relocate.

After the first round of administrative proceedings and a hearing before an ALJ, the ALJ found Ball not disabled and denied his claim. The Appeals Council, however, remanded the matter for additional proceedings.

In May 2006, after completing additional administrative proceedings and another hearing, a different ALJ issued another decision, again finding that Ball was not disabled. The ALJ discounted questionnaires from Thomas Barrett, M.D. and chiropractor Lee Cowan, D.C., which had been submitted in support of Ball's claim. On appeal to this court, Judge Marsh affirmed most of the ALJ's findings, including a determination that Ball's subjective statements were not credible. Judge Marsh remanded the case for the ALJ to address lay witness statements and obtain supplemental testimony from the vocational expert ("VE"). Judge Marsh did not address the Barrett and Cowan submissions.

In February 2009, after completing further administrative proceedings and another hearing, a third ALJ issued another decision, again finding Ball not disabled. On appeal to this court, Magistrate Judge Hubel found it necessary to remand the case again because the third ALJ had not discussed the Barrett and Cowan submissions. Judge Hubel remanded for the ALJ to explain the weight he gave those statements in his decision.

In April 2011, after further administrative proceedings and another hearing, the present ALJ issued the decision on appeal here, in which he again determined that Ball was not disabled. The ALJ correctly determined that the relevant time for Ball's claim ended on December 31, 2005, when

2 - OPINION AND ORDER

his insured status under the Social Security Act expired. To prevail on his claim, Ball needed to show that he was disabled on or before that date. 42 U.S.C. § 423(a)(1)(A). *See Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

The ALJ found that during the relevant time, Ball's ability to perform basic work activities was limited by degenerative joint disease in the left shoulder, degenerative disc disease in the lumbar spine, and PTSD. The ALJ found that, despite these impairments, Ball retained the residual functional capacity ("RFC") to perform work at the medium level of exertion, with limitations on the use of his left arm and hand. He could do work involving simple, routine, repetitive tasks and occasionally more complex tasks. He could have occasional superficial contact with the general public and co-workers for work-related purposes. The VE testified that a person having Ball's RFC and other vocational factors could perform the activities required in medium, unskilled occupations such as kitchen helper and warehouse worker, which represent hundreds of thousands of jobs in the national economy. The ALJ therefore concluded that Ball was not disabled.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I. Claims of Error

Ball contends the ALJ improperly discounted the opinions of VA staff psychiatrist Thomas Barrett, M.D., and chiropractor Lee Cowan, D.C. Ball asks the court to credit this evidence as a matter of law and to remand for an immediate award of benefits.

### II. Dr. Barrett's medical opinion

In May 2008, Dr. Barrett completed a mental impairment questionnaire on a worksheet produced by Ball's attorney. Dr. Barrett indicated diagnoses of PTSD, major depressive disorder, degenerative joint disease of the spine, chronic back pain, and irritable bowel syndrome. In the broad categories of mental function known as the B criteria, Dr. Barrett indicated that Ball had "frequent" deficiencies in concentration, persistence, or pace, and more than three "episodes of deterioration of decompensation" in work or work-like settings. Admin. R. 1493. Dr. Barrett also checked boxes on the worksheet indicating that, if Ball were employed full time, it would be reasonable to expect him to experience difficulty with stamina, pain, or fatigue; to require a reduced work pace; to have difficulty carrying out simple instructions and asking simple questions; to have one or more of his health problems worsen; to have difficulty getting along with others; and to miss work more than four times a month. Dr. Barrett said that Ball had been unable to work for 8 years.

The ALJ gave Dr. Barrett's opinion "very little weight." Admin. R. 1572. An ALJ may discount a treating or examining physician's opinion that is inconsistent with the opinions of other physicians, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If the opinion is not contradicted by

another physician, the ALJ may reject it only for clear and convincing reasons. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002). The ALJ found Dr. Barrett's opinion inconsistent, in significant respects described briefly below, with the findings of Dr. Dobscha, a psychiatrist who treated Ball at the time of the alleged onset of disability. In any event, the ALJ's evaluation of Dr. Barrett's opinion is sufficient under either standard.

The ALJ found Dr. Barrett's report entitled to less weight because it was prepared several years after the termination of Ball's insured status in 2005. In addition, there are no progress notes or treatment records showing that Dr. Barrett treated Ball, administered testing, or made clinical observations that supported his opinion. Dr. Barrett did not provide a response when asked to state the frequency and length of his contact with Ball. There is indirect evidence that Dr. Barrett saw Ball in 2007, but nothing to suggest any contact at the time Ball allegedly became disabled in June 2000 or any other time before Ball's insured status expired in 2005. The ALJ's determination that Dr. Barrett had no contact with Ball during the relevant time is supported by substantial evidence and compels the inference that Dr. Barrett's opinion could not have been based on treatment or clinical observations made during the relevant time. An ALJ can reject a physician's opinion that is unsupported by clinical findings. *Meanal v. Apfel*, 172 F.3d 1111, 1117 (9th Cir. 1999).

Dr. Barrett recited clinical findings, but the absence of corroborating treatment records and notes reflecting clinical observations reasonably infers that these simply restate Ball's subjective description of his history. For example, Dr. Barrett said his opinion was supported by the following clinical findings: "Impulsive anger outbursts with family; No friends; No motivation" persisting for more than 10 years. Admin. R. 1489-90. Dr. Barrett had no basis other than Ball's subjective report from which he could make findings about Ball's interactions with family and friends during the 10

5 - OPINION AND ORDER

years before they met. Corroborating treatment records and clinical findings are crucial where, as here, the Commissioner has shown that the claimant is not credible and his subjective statements are unreliable. An ALJ is entitled to reject a treating physician's opinion that is premised primarily on subjective complaints that the ALJ properly found unreliable. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ found Dr. Barrett's opinion inconsistent with the treatment records from the relevant time. In the months leading up to the alleged onset of disability, Dr. Dobscha noted that Ball was doing well, without severe or persistent depressive periods or problems with irritability. In September 2000, three months after Ball allegedly became disabled, Dr. Dobscha said Ball was stable and continuing to improve. In July 2001, Ball asked Dr. Dobscha to complete a form acknowledging that he was totally disabled, but Dr. Dobscha said "I do not think he is totally disabled." Admin. R. 829. In 2002, Dr. Dobscha rated Ball's global assessment of functioning at a level used to signify patients with mild difficulties in the major functional categories, but generally functioning pretty well. The previous ALJ credited these parts of Dr. Dobscha's opinion, while discounting other parts of the opinion that were based on Ball's subjective statements. It is not necessary for an ALJ to agree with everything in a physician's opinion in order for the opinion to contain substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989). Judge Marsh approved the ALJ's evaluation of Dr. Dobscha's opinion.

The ALJ found no support in the record for Dr. Barrett's conclusion that Ball had experienced repeated episodes of decompensation. Neither Dr. Barrett in his questionnaire, nor Ball in his briefs to the court, identified any evidence of even a single such episode. The absence of such

evidence in the record supports the ALJ's determination that Dr. Barrett's opinion was entitled to little weight.

The ALJ found Ball's persistence, determination, and demonstrated abilities while pursuing government benefits from the VA, the Office of Personnel Management, and the Social Security Administration, inconsistent with Dr. Barrett's assertion that Ball suffered a profound lack of motivation and would have difficulty carrying out simple instructions and asking simple questions. Ball represented himself before the OPM Merit Systems Protection Board, providing a well reasoned brief citing evidence and legal precedent. He wrote numerous letters citing documentary evidence and legal authority in support of his VA and Social Security disability claims. He went to great lengths, including correspondence with former military personnel, to create the appearance that he had been injured in an incident in the Korean demilitaraized zone to support his alleged PTSD symptoms. The ALJ rationally concluded that these activities are inconsistent with a profound lack of motivation and with the inability to carry out simple instructions, ask simple questions, and engage in occasional superficial contacts with others.

The ALJ's reasoning in determining the weight to give Dr. Barrett's opinion is clear and convincing and based on rational inferences drawn from substantial evidence in the record. The ALJ's evaluation of Dr. Barrett's opinion must be upheld, even if the record could reasonably interpreted differently. *Batson,* 359 F.3d at 1193.

### III.    Chiropractor's statements

Dr. Cowan provided chiropractic treatment to Ball for back sprains and strains beginning in 1993. Dr. Cowan wrote a number of letters on Ball's behalf and completed several questionnaires prepared by Ball's attorney in support of Ball's present disability claim. The ALJ gave these

statements "very little weight." Admin. R. 1572. As the ALJ noted, chiropractors are not "acceptable medical sources" within the meaning of the regulations. 20 C.F.R. § 404.1513. The opinions of such sources must be considered, but may be discounted if the ALJ provides reasons that are germane to the witness for doing so. *Molina*, 674 F.3d at 1111. The ALJ addressed each of Cowan's reports, as described below, and found them inconsistent with the objective medical evidence and the other credible evidence in the record as a whole.

To establish a baseline, the ALJ considered Ball's treatment during the time leading up to his alleged onset of disability in June 2000. Ball sought chiropractic treatment from Dr. Cowan for a reported exacerbation of back pain after a motor vehicle accident in October 1997. In March 1998, Ball reported symptoms of overall stiffness and soreness with mild spasms and some restriction in spinal range of motion. Dr. Cowan expected Ball's condition to stabilize within three to four months. Ball did not require regular ongoing treatment, but Dr. Cowan saw him as needed. Ball then complained of occasional knee pain and occasional soreness and stiffness in the neck. In June 2000, Dr. Cowan indicated that Ball was medically stationary. To summarize, Dr. Cowan's records indicate that, at the alleged onset of disability, Ball was medically stationary with occasional flare ups of pain, soreness, and stiffness.

In April 2001, Dr. Cowan wrote a letter on Ball's behalf indicating that Ball could not perform his previous work as a civil rights specialist without pain. Dr. Cowan specified the work related activities Ball could not perform. Ball, who stands 6 feet 4 inches, could not travel in subcompact rental cars and small commuter aircraft without irritating his spine. In addition, Ball could not lift in excess of 50 pounds of luggage and office materials, as required in his travel for work. The ALJ gave this opinion little weight because the ability to perform activities without pain

8 - OPINION AND ORDER

is not the proper standard for determining disability. Many medical conditions produce pain that is not severe enough to preclude gainful employment and millions of people work despite some degree of pain every day. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In addition, the ALJ assessed Ball with the RFC to perform medium work, which does not require lifting in excess of 50 pounds. 20 C.F.R. § 404.1567(c). Accordingly, the exertional limitation in Dr. Cowan's letter was within the ALJ's RFC assessment.

In May 2002, Dr. Cowan completed a questionnaire worksheet, indicating that Ball had been limited to less than sedentary work since December of 2000, with additional limitations in sitting, standing, and walking. Dr. Cowan cited a decreased range of motion in right lateral flexion, flexion, and right rotation in the cervical spine with swelling, muscle spasm, and muscle atrophy. The ALJ gave this opinion no weight because Dr. Cowan's findings were inconsistent with contemporaneous medical evidence provided by Tatsuro Ogisu, M.D. As the ALJ observed, in October 2001, Dr. Ogisu performed an orthopedic examination and found that Ball had full range of motion bilaterally in lateral flexion and rotation of the cervical spine and he had normal muscle bulk. Dr. Ogisu observed that Ball gave questionable effort and exhibited excessive pain behavior and range of motion limitations during the examination which he did not exhibit when distracted. Dr. Ogisu found no basis for any limitation in sitting, standing or walking. Contrary to Dr. Cowan's limitation to less than sedentary exertion, Ball told Dr. Ogisu he could lift up to 50 pounds with the right hand and up to 40 pounds on the left. Dr. Ogisu opined that these restrictions would be reasonable and consistent with his objective findings. These lifting limitations are consistent with medium exertion and fall within the ALJ's RFC assessment. The inconsistency between Dr. Cowan's opinion and the

medical evidence is a germane reason sufficient to discount Dr. Cowan's opinion. *Bayliss*, 427 F.3d at 1218.

In March 2003, Dr. Cowan indicated that Ball experienced periods of exacerbated pain during which he may be "incapacitated for hours or days at a time" and "unable to handle daily physical challenges occupationally or at home." Admin. R. 928-29. The previous ALJ found that these limitations had been based on Ball's unreliable subjective complaints. In June 2006, Dr. Cowan responded that his opinion was not based solely on Ball's subjective complaints, but also on diagnostic imaging that showed degenerative changes with nerve root impingement. The ALJ found that the diagnostic imaging Dr. Cowan cited showed only mild degenerative changes with "minimal involvement of the exiting nerve roots." Admin. R. 1104. The ALJ accepted that these medical findings supported a diagnosis of degenerative disc disease, but found they did not explain the extremely limiting functional effects in Dr. Cowan's opinion. The ALJ did not believe the fairly moderate findings supported the degree of limitation Dr. Cowan suggested and agreed with the previous ALJ's conclusion that the opinion was based on Ball's unreliable subjective complaints about the severity of his limitations.

In April 2008, Dr. Cowan completed another questionnaire produced by Ball's attorney, indicating that Ball had been limited to less than sedentary activity since before his alleged onset of disability. Contrary to the evidence that Ball worked until June 2000, Dr. Cowan opined that he had been unable to work since 1997. The ALJ gave this statement no weight because it was completed several years after the expiration of Ball's insured status, unsupported by medical evidence, and inconsistent with Dr. Cowan's own findings that Ball was having only occasional flare ups of soreness and stiffness in 1997 and 1998.

In February and March 2011, Dr. Cowan completed statements indicating that Ball had suffered spinal stenosis and degeneration with a disc bulge and nerve root impingement since 1997. He said Ball could not do prolonged labor, sitting, standing, walking, bending or twisting. He could not perform daily activities due to pain, weakness, muscle spasms, and limitations in range of motion. He said Ball could lift 20 pounds rarely and 10 pounds occasionally. Dr. Cowan said Ball would have limited ability to concentrate or persist for simple tasks, would require unscheduled breaks, and would be likely to miss work at least four days each month. The ALJ gave this opinion no weight. The ALJ found this opinion, insofar as it relates to the period that is relevant for Ball's claim, generally inconsistent with the objective medical evidence and other credible evidence in the record. Indeed, the opinion is contradicted by the contemporaneous medical findings of Dr. Ogisu from 2001 and by Dr. Cowan's own progress notes indicating that Ball was medically stationary with only occasional slight soreness in the body and neck.

The ALJ's reasons for discounting Dr. Cowan's statements are germane to the witness and supported by substantial evidence. Accordingly, the ALJ's evaluation of Dr. Cowan's opinion is legally sufficient. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

## CONCLUSION

Ball's claims of error cannot be sustained for the foregoing reasons. The Commissioner's decision is AFFIRMED.

DATED this 19th day of June, 2013.

Robert E. Jones, Senior Judge
United States District Court